**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ X

SUZANNE VERDI and VINCENT VERDI,

Plaintiffs,

-against-

THE CITY OF NEW YORK
and JOHN and JANE DOE POLICE OFFICERS #1–5,

Defendants.

------------------------------------------------------------------ X

**COMPLAINT**

## PRELIMINARY STATEMENT

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 to redress the unlawful arrest and prosecution of Plaintiffs in violation of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

2. This case arises from a fundamentally flawed and constitutionally deficient police response conducted by members of the New York City Police Department on June 29, 2024, in Queens County. Rather than conduct a fair and impartial investigation, responding officers engaged in selective and biased enforcement, crediting unverified and hostile accusations while disregarding readily available exculpatory evidence.

3. Plaintiffs expressly informed the officers that video camera footage existed which would demonstrate their innocence. Despite this, the officers knowingly refused to review that evidence and deliberately disregarded information that would have negated any basis for arrest. The officers likewise failed to interview relevant witnesses, reconcile conflicting accounts, or assess the credibility of the accusations made against Plaintiffs.

4. Instead, the officers relied on uncorroborated and unreliable statements and proceeded directly to arrest, acting without probable cause and in reckless disregard of clearly

exculpatory video evidence. This conduct was not the result of mere oversight, but reflected a conscious decision to ignore evidence inconsistent with the accusations against Plaintiffs.

5. As a result of this unlawful conduct, Plaintiffs were arrested, processed, and formally charged with criminal offenses they did not commit. Plaintiffs were thereafter compelled to appear in Queens Criminal Court on multiple occasions, retain counsel, and defend themselves against baseless charges, all while suffering the stigma, anxiety, and disruption associated with a pending criminal prosecution.

6. The criminal proceedings terminated entirely in Plaintiffs' favor on July 19, 2024, when all charges were dismissed, confirming that there was no lawful basis to arrest or prosecute Plaintiffs.

7. The conduct at issue reflects broader failures within the NYPD, including a pattern and practice of selective enforcement, reliance on uncorroborated accusations, and the knowing disregard of exculpatory evidence, including video recordings. These failures are further compounded by the City's inadequate training, supervision, and discipline of officers with respect to basic constitutional standards governing probable cause and investigation.

8. As a direct and proximate result of Defendants' actions, Plaintiffs suffered loss of liberty, emotional distress, humiliation, reputational harm, and ongoing psychological injury.

**PARTIES**

9. Plaintiffs SUZANNE VERDI and VINCENT VERDI are individuals residing in Queens County, New York.

10. At all times relevant herein, Plaintiffs were law-abiding citizens entitled to the full protections of the Constitution and laws of the United States.

11. Defendant CITY OF NEW YORK (the "City") is a municipal corporation organized and existing under the laws of the State of New York. The City, through the New York City Police Department, was responsible for the policies, practices, supervision, training, and conduct of its police officers, including the Defendant officers involved in the events described herein.

12. Defendants JOHN and JANE DOE POLICE OFFICERS #1–5 are police officers employed by the New York City Police Department whose identities are not yet known to Plaintiffs.

13. At all relevant times, said Defendant officers were acting under color of state law and within the scope of their employment as agents, servants, and employees of the City of New York.

14. Defendant officers are sued in their individual capacities.

15. Plaintiffs will seek leave to amend this Complaint to substitute the true names and shield numbers of the Defendant officers upon information and belief once such information is obtained through discovery.

16. At all relevant times, the acts and omissions of the Defendant officers were carried out pursuant to the customs, policies, and practices of the City of New York, as described more fully below.

17. At all relevant times, Defendant officers had a duty to act in accordance with the Constitution and laws of the United States, including the obligation to refrain from

unlawful arrest, to conduct reasonable investigations, and to avoid the knowing disregard of exculpatory evidence.

## JURISDICTION AND VENUE

18. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

19. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, in that the claims asserted herein arise under the Constitution and laws of the United States.

20. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b), in that the events giving rise to the claims occurred within this District, including in Queens County, New York.

21. This Court has personal jurisdiction over Defendant CITY OF NEW YORK because it is a municipal corporation organized under the laws of the State of New York and conducts business within this District.

22. This Court has personal jurisdiction over the Defendant officers because, at all relevant times, they were employed by the New York City Police Department and engaged in the conduct complained of within this District and under color of state law.

## FACTUAL ALLEGATIONS

23. On June 29, 2024, Plaintiffs SUZANNE VERDI and VINCENT VERDI were law-abiding residents of Queens County, New York.

24. On that date, Plaintiffs became involved in a neighborhood dispute with certain individuals who acted with hostility toward them and made false and exaggerated accusations of wrongdoing.

25. In an effort to resolve the situation lawfully and obtain assistance, Plaintiffs contacted the New York City Police Department and requested police intervention.

26. Plaintiffs reasonably expected that responding officers would conduct a fair, impartial, and competent investigation into the circumstances.

27. Upon arrival, NYPD officers failed to conduct any meaningful or objective investigation and instead immediately adopted a biased and adversarial posture toward Plaintiffs.

28. The officers credited the statements of hostile individuals without corroboration and without assessing the reliability, consistency, or credibility of those statements.

29. Plaintiffs attempted to provide their account of the events and repeatedly advised the officers that the accusations being made against them were false.

30. Plaintiffs specifically informed the officers that video camera footage existed on Plaintiffs' own home, capturing the relevant events and demonstrating their innocence.

31. The video cameras were readily accessible and under Plaintiffs' control, and Plaintiffs offered to make the footage immediately available to the responding officers.

32. Despite being made aware of this readily available and reliable exculpatory evidence, the officers knowingly refused to review the video footage and deliberately disregarded information that would have negated any basis for arrest.

33. The officers further failed to take basic investigative steps, including but not limited to interviewing relevant witnesses, canvassing the area, or reconciling conflicting accounts of what had occurred.

34. The officers ignored inconsistencies in the accusations made against Plaintiffs and failed to consider evidence that undermined those accusations.

35. Rather than conduct a proper investigation, the officers selectively credited accusations adverse to Plaintiffs while disregarding information that would have exonerated them.

36. The officers' conduct reflected selective and biased enforcement of the law, resulting in Plaintiffs being treated differently from other involved individuals without a legitimate basis.

37. At no time did the officers possess facts sufficient to establish probable cause that Plaintiffs had committed any crime.

38. Notwithstanding the absence of probable cause, and in reckless disregard of clearly exculpatory evidence, the officers placed Plaintiffs under arrest.

39. Plaintiffs were handcuffed, detained, and transported against their will.

40. Plaintiffs were further confined in a holding cell and deprived of their liberty for a period of time prior to and during arrest processing.

41. Plaintiffs were subjected to the indignity, fear, and humiliation associated with being handcuffed, detained, and confined in a cell despite having committed no crime.

42. Plaintiffs were processed and formally charged with criminal offenses that they did not commit.

43. As a direct consequence of the charges initiated by Defendants, Plaintiffs were required to appear in Queens Criminal Court on multiple occasions.

44. Plaintiffs were compelled to retain legal counsel and defend themselves against the pending criminal charges.

45. Plaintiffs were required to comply with court-imposed obligations, including returning to court as directed, and remained under the ongoing threat of criminal prosecution.

46. These restrictions and obligations constituted a post-arraignment deprivation of Plaintiffs' liberty within the meaning of the Fourth Amendment.

47. Throughout the pendency of the criminal proceedings, Plaintiffs suffered anxiety, fear, and distress associated with being accused of crimes they did not commit.

48. On July 19, 2024, all criminal charges against Plaintiffs were dismissed in their entirety by the Queens Criminal Court.

49. The dismissal constituted a favorable termination of the proceedings and confirmed that there was no lawful basis to arrest or prosecute Plaintiffs.

50. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered loss of liberty, humiliation, reputational harm, and significant emotional and psychological injury.

51. Plaintiffs have experienced ongoing mental anguish, anxiety, and stress as a result of the incident and its aftermath, and have required and/or will require treatment for these conditions.

52. The injuries sustained by Plaintiffs were entirely avoidable and were caused solely by Defendants' failure to adhere to basic constitutional and policing standards.

## MONELL ALLEGATIONS

53. At all relevant times, Defendant CITY OF NEW YORK, through the New York City Police Department ("NYPD"), maintained, implemented, and enforced policies, practices, and customs that permitted, encouraged, and caused NYPD officers to effect arrests and initiate criminal proceedings without probable cause, including by relying on uncorroborated accusations while disregarding readily available exculpatory evidence.

54. Upon information and belief, the City has long been aware of a recurring and widespread pattern in which NYPD officers fail to conduct constitutionally adequate investigations prior to making arrests, including by:

(a) failing to review readily available video or surveillance evidence;

(b) failing to interview relevant witnesses;

(c) failing to reconcile conflicting accounts; and

(d) selectively crediting accusations adverse to the accused without corroboration.

55. This pattern and practice has been reflected in numerous civil rights lawsuits, civilian complaints, and internal disciplinary findings, which have repeatedly placed the City on notice that its officers were engaging in unconstitutional investigative practices and effecting arrests without probable cause.

56. Upon information and belief, these deficiencies are well documented in publicly available reports, civil rights litigation, and findings by oversight bodies, including the Civilian Complaint Review Board, which has repeatedly identified failures by NYPD officers to properly evaluate evidence and conduct constitutionally adequate investigations.

57. Despite such notice, the City has failed to take meaningful corrective action and has instead permitted these practices to continue unabated, thereby demonstrating deliberate indifference to the constitutional rights of individuals with whom NYPD officers come into contact.

58. Upon information and belief, the City has further failed to implement adequate policies, training, and supervision regarding the handling and evaluation of objective evidence, including video recordings, which are frequently dispositive in determining whether probable cause exists.

59. In modern policing, the availability of video evidence—including residential surveillance systems, body-worn cameras, and other recordings—makes it obvious that officers must be trained to identify, obtain, review, and consider such evidence prior to making arrests. The City's failure to provide such training constitutes deliberate indifference, as it creates a highly predictable risk that officers will disregard exculpatory evidence and effect unlawful arrests.

60. Upon information and belief, NYPD officers are routinely permitted and, in practice, encouraged—whether formally or informally—to resolve incidents quickly by making arrests based on incomplete or biased investigations, particularly in the context of neighborhood disputes and cross-accusations. This practice fosters a culture of confirmation bias and results in the systematic disregard of exculpatory evidence.

61. The City has further failed to adequately supervise, monitor, and discipline officers who engage in unconstitutional conduct, including the failure to conduct reasonable investigations and the knowing or reckless disregard of exculpatory evidence. This failure

to impose discipline or corrective measures has effectively ratified and reinforced such misconduct.

62. Upon information and belief, public reporting and oversight findings further demonstrate that NYPD officers frequently fail to produce or consider available video evidence and that substantiated misconduct complaints rarely result in meaningful discipline, thereby reinforcing a culture in which constitutional violations are tolerated.

63. Upon information and belief, incidents involving unlawful arrests based on incomplete, biased, or constitutionally deficient investigations occur with sufficient frequency within the NYPD to constitute a widespread and persistent practice.

64. The need for proper training, supervision, and discipline in this area is so obvious that the City's failure to provide such safeguards constitutes deliberate indifference to the constitutional rights of individuals, including Plaintiffs.

65. As a direct and foreseeable result of these policies, practices, customs, and failures, Defendant officers in this case:

(a) refused to review readily available exculpatory video evidence located at Plaintiffs' residence;

(b) failed to conduct a reasonable or minimally competent investigation;

(c) relied on uncorroborated and unreliable accusations; and

(d) effected Plaintiffs' arrest without probable cause.

66. These same policies and practices further caused Defendant officers to initiate and continue criminal proceedings against Plaintiffs despite the absence of probable cause and in reckless disregard of exculpatory evidence demonstrating Plaintiffs' innocence.

67. The unconstitutional policies, practices, and customs of the City of New York were the moving force behind the violations of Plaintiffs' constitutional rights, including their unlawful arrest, malicious prosecution, and resulting deprivation of liberty.

68. As a direct and proximate result of the City's conduct, Plaintiffs suffered the damages described herein.

69. Defendant CITY OF NEW YORK is therefore liable to Plaintiffs pursuant to 42 U.S.C. § 1983.

**FIRST CAUSE OF ACTION**
**(42 U.S.C. § 1983 – FALSE ARREST)**

70. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

71. At all relevant times, Defendants, acting under color of state law, intentionally and unlawfully detained, seized, and confined Plaintiffs against their will.

72. Defendants placed Plaintiffs under arrest, handcuffed them, detained them, transported them, and confined them in a holding cell, thereby depriving Plaintiffs of their liberty.

73. Plaintiffs did not consent to their detention and were aware of their confinement.

74. At the time of the arrest, Defendants lacked probable cause to believe that Plaintiffs had committed any crime.

75. Specifically, Defendants relied on uncorroborated and unreliable accusations made by hostile individuals while failing to conduct a reasonable or minimally competent investigation.

76. Defendants were made aware of readily available exculpatory evidence, including video camera footage located on Plaintiffs' residence, which Plaintiffs identified and offered to make immediately available.

77. Upon information and belief, Defendants either refused to review or, after reviewing, deliberately disregarded its exculpatory content.

78. In either case, Defendants failed to take basic investigative steps, including interviewing relevant witnesses, assessing credibility, and reconciling conflicting accounts.

79. Defendants knowingly disregarded exculpatory information that would have negated any basis for arrest and instead relied on uncorroborated and unreliable accusations.

80. Notwithstanding the absence of probable cause, and in reckless disregard of clearly exculpatory evidence, Defendants placed Plaintiffs under arrest.

81. No reasonable police officer in Defendants' position could have believed that probable cause existed under the circumstances presented, including where readily available exculpatory video evidence was identified and either ignored or consciously disregarded.

82. Defendants' conduct was objectively unreasonable and violated clearly established law requiring officers to consider available exculpatory evidence and to refrain from making arrests in the absence of probable cause.

83. At a minimum, no reasonable officer could have believed that arguable probable cause existed under these circumstances, thereby defeating any claim of qualified immunity.

84. The conduct of Defendants was intentional, willful, and undertaken with reckless disregard for Plaintiffs' rights under the Fourth Amendment to the United States Constitution.

85. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs suffered loss of liberty, emotional distress, humiliation, and other damages.

86. Plaintiffs are entitled to recover compensatory damages, as well as punitive damages against the individual Defendants, and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

87. Defendants' conduct was intentional, willful, malicious, and undertaken with reckless disregard for Plaintiffs' clearly established constitutional rights, thereby entitling Plaintiffs to an award of punitive damages against the individual Defendants in an amount sufficient to punish such conduct and deter similar misconduct in the future.

**SECOND CAUSE OF ACTION**
**(42 U.S.C. § 1983 – MALICIOUS PROSECUTION)**

88. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

89. Defendants initiated criminal proceedings against Plaintiffs by causing their arrest, processing, and the filing of criminal charges.

90. Defendants forwarded incomplete and misleading information to prosecuting authorities by failing to disclose or account for exculpatory video evidence.

91. Defendants further initiated and continued the prosecution of Plaintiffs despite the absence of probable cause and despite the existence of material exculpatory evidence.

92. At all relevant times, Defendants lacked probable cause to initiate or continue criminal proceedings against Plaintiffs.

93. Defendants relied on uncorroborated and unreliable accusations while failing to conduct a reasonable or constitutionally adequate investigation.

94. Defendants were aware of exculpatory evidence, including video camera footage located on Plaintiffs' residence, which Plaintiffs identified and offered to make immediately available.

95. Upon information and belief, Defendants either failed to review such evidence or, after reviewing it, deliberately disregarded its exculpatory content.

96. Defendants thereby suppressed and/or disregarded exculpatory evidence that would have negated any basis for prosecution.

97. Defendants initiated and continued criminal proceedings against Plaintiffs in the face of known or readily available exculpatory evidence demonstrating Plaintiffs' innocence.

98. The continuation of criminal proceedings under these circumstances was undertaken without probable cause and in reckless disregard of Plaintiffs' constitutional rights.

99. Defendants acted with malice and in bad faith, including by disregarding exculpatory evidence and pursuing charges for reasons other than the pursuit of justice.

100. No reasonable officer could have believed that probable cause existed to prosecute Plaintiffs under these circumstances, and no reasonable officer could have believed that arguable probable cause existed.

101. As a result of Defendants' conduct, Plaintiffs were subjected to criminal proceedings and required to appear in court on multiple occasions.

102. Plaintiffs were compelled to retain counsel and defend themselves against the pending charges.

103. Plaintiffs were required to comply with court-imposed obligations and remained under the ongoing threat of prosecution.

104. These restrictions constituted a post-arraignment deprivation of liberty within the meaning of the Fourth Amendment.

105. The criminal proceedings terminated in Plaintiffs' favor on July 19, 2024.

106. As a direct and proximate result of Defendants' malicious prosecution, Plaintiffs suffered loss of liberty, emotional distress, reputational harm, and other damages.

107. Defendants' conduct was intentional, willful, and undertaken with reckless disregard for Plaintiffs' constitutional rights.

108. Plaintiffs are entitled to recover compensatory damages, as well as punitive damages against the individual Defendants, and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

109. Defendants' conduct was intentional, willful, malicious, and undertaken with reckless disregard for Plaintiffs' clearly established constitutional rights, thereby entitling Plaintiffs to an award of punitive damages against the individual Defendants in an amount sufficient to punish such conduct and deter similar misconduct in the future.

## THIRD CAUSE OF ACTION
## (§1983 MONELL)

110. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

111. At all relevant times, Defendant CITY OF NEW YORK, through the New York City Police Department, maintained and enforced policies, practices, and customs that

permitted and encouraged unconstitutional conduct by its police officers, including arrests and prosecutions without probable cause.

112. Upon information and belief, the City has long been aware of a pattern and practice in which NYPD officers fail to conduct adequate and constitutionally sufficient investigations prior to making arrests, including failing to review available video evidence, failing to interview witnesses, and failing to assess the credibility of accusations.

113. This pattern has been reflected in numerous civil rights lawsuits, civilian complaints, and internal disciplinary findings, which placed the City on notice that its officers were engaging in unconstitutional investigative practices and improper arrests.

114. Despite this notice, the City has failed to take meaningful corrective action and has instead permitted these practices to continue.

115. The City has failed to properly train its officers regarding the requirements of probable cause, including the obligation to consider and evaluate readily available exculpatory evidence, such as video recordings, prior to effecting an arrest or initiating criminal charges.

116. The City has further failed to adequately supervise, monitor, and discipline officers who engage in unconstitutional conduct, including the failure to investigate and the knowing disregard of exculpatory information, thereby tacitly authorizing and encouraging such misconduct.

117. Upon information and belief, NYPD officers are routinely permitted to initiate and continue criminal proceedings based on incomplete, biased, or inadequate

investigations, including circumstances where exculpatory evidence is known or readily available but is ignored or consciously disregarded.

118. The City's failure to train, supervise, and discipline its officers constitutes deliberate indifference to the constitutional rights of individuals, including Plaintiffs.

119. As a direct and proximate result of these policies, practices, and customs, Defendant officers in this case knowingly refused to review exculpatory video evidence located on Plaintiffs' residence or, after reviewing it, deliberately disregarded its exculpatory content.

120. These same policies and practices caused Defendant officers to fail to conduct a reasonable investigation, to rely on uncorroborated accusations, and to effect Plaintiffs' arrest without probable cause.

121. These same policies and practices further caused Defendants to initiate and continue criminal proceedings against Plaintiffs despite the absence of probable cause and in reckless disregard of exculpatory evidence demonstrating Plaintiffs' innocence.

122. The unconstitutional policies, practices, and customs of the City of New York were the moving force behind the violations of Plaintiffs' constitutional rights, including their unlawful arrest, malicious prosecution, and resulting deprivation of liberty.

123. As a direct and proximate result of the City's policies, practices, and customs, Plaintiffs suffered the damages described herein.

124. Plaintiffs are entitled to recover compensatory damages, together with attorney's fees and costs pursuant to 42 U.S.C. § 1988.

**FOURTH CAUSE OF ACTION**
**(§1983 FAILURE TO INTERVENE)**

125. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

126. At all relevant times, Defendant officers were present at the scene and personally participated in or observed the events giving rise to Plaintiffs' unlawful arrest and prosecution.

127. Defendant officers were aware, or had reason to be aware, that Plaintiffs' constitutional rights were being violated, including through arrest without probable cause and the initiation and continuation of criminal proceedings in the absence of lawful justification.

128. Defendant officers were specifically aware of exculpatory evidence, including video camera footage located on Plaintiffs' residence, which was identified and made available to them, and which negated any basis for arrest.

129. Upon information and belief, Defendant officers either failed to review such evidence or, after reviewing it, deliberately disregarded its exculpatory content.

130. Defendant officers therefore knew or should have known that Plaintiffs were being subjected to unlawful arrest and prosecution, including the continuation of proceedings without probable cause.

131. Each Defendant officer had a realistic and reasonable opportunity to intervene to prevent or mitigate these constitutional violations, including by requiring review of exculpatory evidence, conducting further investigation, declining to participate in the arrest, or taking steps to prevent or terminate the prosecution.

132. Despite having such opportunity, Defendant officers failed to take reasonable steps to prevent or stop the violations of Plaintiffs' constitutional rights.

133. Defendant officers further failed to intervene in the ongoing constitutional violations, including Plaintiffs' unlawful arrest, detention, and prosecution, despite knowing that such violations lacked probable cause and were based on incomplete and biased investigation.

134. The failure of Defendant officers to intervene under these circumstances constitutes a separate and independent violation of Plaintiffs' clearly established constitutional rights.

135. As a direct and proximate result of Defendants' failure to intervene, Plaintiffs were subjected to unlawful arrest, detention, prosecution, and resulting deprivation of liberty.

136. Defendants' conduct was intentional, willful, and undertaken with reckless disregard for Plaintiffs' constitutional rights.

137. Plaintiffs are entitled to recover compensatory damages, as well as punitive damages against the individual Defendants, and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

138. Defendants' conduct was intentional, willful, malicious, and undertaken with reckless disregard for Plaintiffs' clearly established constitutional rights, thereby entitling Plaintiffs to an award of punitive damages against the individual Defendants in an amount sufficient to punish such conduct and deter similar misconduct in the future.

**WHEREFORE**, Plaintiffs respectfully demand judgment against Defendants, jointly and severally, as follows:

a. Compensatory damages in an amount to be determined at trial, including but not limited to damages for:

– loss of liberty;

– emotional distress, mental anguish, and psychological injury;

– humiliation, embarrassment, and reputational harm;

– legal expenses incurred in defending the underlying criminal charges;

– and other consequential damages resulting from Defendants' unlawful conduct;

b. Punitive damages against the individual Defendants in an amount sufficient to punish their willful and reckless disregard of Plaintiffs' constitutional rights and to deter similar misconduct in the future;

c. A declaration that Defendants' acts and omissions, as alleged herein, violated Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution;

d. Reasonable attorneys' fees, costs, and disbursements pursuant to 42 U.S.C. § 1988 and other applicable provisions of law;

e. Pre-judgment and post-judgment interest as permitted by law;

f. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: New York, New York
May 6, 2026

Tanner & Ortega, LLP
Hugo Ortega, Esq.
Attorney for Plaintiffs
277 Broadway, Suite 1701A
New York, NY 10007
Tel: (212) 962-1333
Email: hortega@tannerortega.com